382 So.2d 184 (1980)
Cecil SULLIVAN
v.
GULF STATES UTILITIES COMPANY and Boh Brothers Construction Company.
No. 13031.
Court of Appeal of Louisiana, First Circuit.
January 21, 1980.
Rehearing Denied March 31, 1980.
*185 Paul H. Due, Baton Rouge, counsel for plaintiff-appellant, Cecil Sullivan.
Robert L. Kleinpeter, Baton Rouge, counsel for defendant-appellee, Boh Bros. Const. Co.
W. Arthur Abercrombie, Jr., Baton Rouge, counsel for defendant-appellee, Gulf States Utilities Co.
Before COVINGTON, LOTTINGER and COLE, JJ.
LOTTINGER, Judge.
This is an action ex delicto in which the plaintiff seeks damages against defendants, Gulf States Utilities Company (G.S.U.) and Boh Brothers Construction Company, for injuries he received in a one car accident. Plaintiff appeals from an adverse trial court judgment.
Plaintiff, a security officer for the Ethyl Corporation in Baton Rouge, finished his shift at 10:00 on the night of November 27, 1975. When he walked to his pickup truck in the Ethyl parking lot, he noticed that it appeared unusually dirty and he decided to take it to the plant's car wash before driving home. The Ethyl parking lot, including the driving lane, had recently been the site of construction work by Boh Brothers under contract with the lot's owner, G.S.U. Boh Brothers had constructed a number of concrete piers which were two feet above ground level and four and a half feet in diameter, and which were to be used by G.S.U. as foundations for high voltage utility poles.
Plaintiff proceeded through the driving lane of the parking lot towards the car wash at a speed of about 18-20 miles per hour. He passed one of the piers which had been constructed by Boh Brothers near the sodium gate of the Ethyl plant. After he passed the sodium gate plaintiff noticed headlights which were apparently on high beam directed towards him from the general area of the hydrocarbon gate, which was some 300 feet ahead of him in the parking lot. He testified that the oncoming lights were apparently on bright and that he was temporarily blinded or distracted by them. Some few seconds after he was allegedly blinded or distracted by the oncoming lights, his truck ran headon into one of the concrete piers which was located near the center of the driving lane. The testimony is not clear as to how long the plaintiff was blinded or distracted by the oncoming lights before he hit the pier. A fair inference can be drawn, however, that he had at least a few seconds to adjust to the oncoming lights before his pickup truck hit the pier.
At the time of the accident, the pier was not marked, painted or barricaded, and testimony of various Ethyl employees and expert witnesses indicated that the pier's grayish color blended almost imperceptibly into the aging asphalt that covered the parking lot. The parking lot around the pier plaintiff hit was unlighted, although a *186 fence 50 to 60 feet away was lit in places. The pier plaintiff passed before he hit the other pier was better lit because of lighting in the area of the sodium gate.
Testimony at the trial indicated that Ethyl leased the lot from G.S.U. and was under contract with G.S.U. to provide safety barricades and other safety measures in the parking lot, as well as to direct the parking of Ethyl employees. The testimony also showed that Boh Brothers, under instructions from G.S.U., contacted security personnel at Ethyl in advance of the construction of the piers. However, on the night of the accident, barricades which previously had been placed in front of the pier in question were not there, having been removed prior to the accident.
Plaintiff knew that a number of piers had been constructed in the Ethyl parking lot but said he did not see the one he hit until an instant before he struck it, although he knew it was somewhere in the path ahead. The plaintiff also testified that he was aware that protective barrels had been removed from around most of the structures. The accident resulted in serious injuries to plaintiff and some later complications.
The trial judge, in written reasons for judgment, found both defendants negligent in failing to place warning devices around the pier. He labeled the pier "a trap, a hidden defect, and a hazard right in the middle of a lane used by vehicles for access and egress." However, he denied plaintiff recovery because he found plaintiff to be contributorily negligent in causing the accident. He reasoned that plaintiff, as an Ethyl employee engaged in security measures, knew of the construction work, knew that the piers had been constructed in and around the driving lane of the parking lot and should have been more alert and watchful while he was proceeding down the parking lane. The trial judge also said that the plaintiff should have anticipated the location of the pier and should have slowed down when he was blinded or distracted by the oncoming headlights. The judge's decision was not based on the fact that Ethyl was the company in charge of placing safety devices around the piers because the trial court found that neither G.S.U. nor Boh Brothers provided Ethyl with the proper specifications for marking these particular piers. In his signed judgment the trial judge did not mention that the defendants were negligent but simply ruled in their favor and dismissed plaintiff's suit. The judge's finding of defendants' negligence was made in his written reasons only.
In brief, plaintiff specifies a number of errors which can be condensed into two for purposes of this appeal:
The trial judge erred in finding plaintiff contributorily negligent; and
The trial court erred in applying contributory negligence to a case in which liability of the defendants should be based on the strict liability provisions of La.C.C. art. 2317.[1]
As a procedural matter, the plaintiff also contends that the defendants should be precluded from challenging the trial court's written reasons finding them negligent because the defendants neither appealed nor answered plaintiff's appeal. The defendants claim they were not required to answer the appeal because La.C.C.P. art. 2133 does not require an appellee to answer unless he wants a judgment modified, revised or reversed in part or unless he seeks damages against the appellant. Since the signed judgment did not hold the defendants negligent, they claim there is no adverse judgment from which they need to appeal. We agree. The trial court's written reasons, while defining and elucidating the principles upon which he is deciding a case, form no part of the official judgment he signs and from which appeals are taken. La.C.C.P. art. 1917, 1918. Defendants did *187 not need to appeal or answer the appeal in order to question the trial court's written reasons and to argue their position on appeal.

PLAINTIFF'S CONTRIBUTORY NEGLIGENCE
The trial court's determination of negligence on the part of defendants was manifestly correct. The defendants owed a duty to persons using the parking lot to properly label, mark and/or barricade the concrete piers that had been constructed in the lot. These concrete piers were indeed traps for the unwary. They were difficult to see at night and they easily could have been painted, marked or barricaded.
Our biggest problem on this appeal is whether the trial court was correct in finding plaintiff to be contributorily negligent. After a thorough reading of this record and a diligent investigation of the points raised by counsel in their briefs, we have decided that the trial judge was correct in finding the plaintiff contributorily negligent in striking the pier.
We think this result should apply for a number of reasons. First, plaintiff had been a security guard with Ethyl for many years and was well aware of all the conditions that existed in the parking lot at the time of the accident. Plaintiff knew that the piers, including the one that he hit, had been constructed in the parking lot more than two months prior to the accident. Secondly, plaintiff, when proceeding towards the car wash and when confronted with the oncoming headlights, had sufficient time at the slow and reasonable speed at which he was proceeding to detect and avoid the pier which he knew was somewhere in the path ahead. Plaintiff simply failed to keep a proper lookout in light of all the circumstances surrounding this accident. Were he a casual visitor to the Ethyl plant the result might be different. But he was not, and the result is not.
The plaintiff urges that the case of Rue v. State, Department of Highways, 372 So.2d 1197 (La.1979) should allow him to recover in this case. In Rue the plaintiff motorist inadvertently, perhaps negligently, drove off the highway onto the shoulder of the road where her car struck a deep rut. The court allowed her to recover, even though she was negligent in not staying on the main thoroughfare, because she did not know or suspect that the road shoulder was bad. We think the Rue case is distinguishable on its facts, in that the plaintiff in that case had no idea of the defect existing in the shoulder of the road. In the case at bar, however, the plaintiff was well aware there was a concrete abutment in the driving lane of the parking lot.
The plaintiff also urges that the doctrine of momentary forgetfulness as enunciated in the case of McClung v. Town of Winnfield, 46 So.2d 920 (La.App. 2nd Cir. 1950) should apply to this case. The McClung case is also distinguishable on its facts. The driver in McClung had just entered a bridge when he was blinded by the headlights of an oncoming vehicle. He had traveled the route frequently and knew that there was a deep hole on one side of the bridge. Faced with the oncoming headlights, the driver in that case veered slightly to the right to make sure his car and the oncoming car did not hit. In so doing his car ran into the deep rut in the bridge and he suffered injuries. The court allowed him to recover by holding, in effect, that his temporary forgetfulness was justified under the facts of that case. In the case at bar, plaintiff Sullivan did not have to veer to miss the oncoming vehicle. The record does not even show that the vehicle was traveling in his lane of traffic. The evidence infers that plaintiff had sufficient time from the moment he noticed the headlights until the time he hit the abutment to make an adjustment in his driving to miss the concrete pier.

STRICT LIABILITY
Plaintiff argues strenuously in brief that the liability of the defendants is predicated not solely upon the general delictual rule of negligence under Article 2315 but also upon the strict liability provisions of La.C.C. art. *188 2317 as enunciated in Loescher v. Parr, 324 So.2d 441 (La.1975). The trial judge did not discuss the strict liability argument, apparently finding that the case should be decided solely on the traditional grounds of negligence. The strict liability argument is that the concrete pier was a "thing" owned by G.S.U. and under the garde of Boh Brothers at the time of the accident. The "thing" was defective, i. e., created an unreasonable risk of injury to others, because it was not marked or lighted so as to warn others of its presence. See Loescher, supra, which defines a defective thing. The defective thing caused injury to another for which the defendants are allegedly strictly liable even though they possibly are not negligent.
Under the Supreme Court's definition of defect in Loescher, the concrete pier in this case was a defective thing, made so, interestingly, because of the negligence of the defendants in not marking, painting or barricading it. However, because we agree with the trial judge that the defendants were negligent and that the plaintiff was contributorily negligent in causing the accident, the only difference an additional finding of strict liability under Article 2317 could possibly make concerns the question of whether the conduct necessary to find contributory negligence is the same conduct necessary to find victim fault so as to bar recovery in a strict liability case.[2]
The Supreme Court in Loescher v. Parr listed three ways a defendant could escape liability in a strict liability case: by showing that the accident was caused by the fault of the victim or the fault of a third person or by showing that the accident was caused by an irresistible natural force. The court gave little attention to the defenses beyond a mere mention of them, but it did say that for victim fault or third party fault to absolve a defendant, such fault must be a "substantial factor" in bringing about the harm producing incident. 324 So.2d at 449.
Exactly what constitutes victim fault sufficient to relieve a defendant of liability under Article 2317 has received various treatment in the jurisprudence.[3] Additionally, no view has emerged as to whether victim fault and third party fault can be gauged by the same yardstick.
In Marquez v. City Stores Company, 371 So.2d 810 (La.1979), the Supreme Court, in holding a department store strictly liable for personal injuries caused by its defective escalator, gave little discussion to the strict liability defenses, other than to state tersely that "there was no finding of contributory negligence" on plaintiff's part. 371 So.2d at 813. The Marquez case, then, is of little help in trying to explain the extent of the strict liability defenses.
We are aware of at least one decision in this circuit which seems to equate victim fault with contributory negligence. In Korver v. City of Baton Rouge, 348 So.2d 708 (La.App. 1st Cir. 1977), the court in a negligence action relieved the defendant of liability in a sidewalk-tripping case by finding the plaintiff contributorily negligent. The court also refused to grant recovery under Article 2317's strict liability provision because it felt that the conduct of the plaintiff which defeated the negligence action was sufficient "victim fault" to defeat the strict liability action.
In the related area of the strict liability for the acts of one's children, the Third Circuit in a pair of recent cases seems to equate victim fault with contributory negligence, though refusing to so label it. Hebert v. United Services Automobile Association, 355 So.2d 575 (La.App. 3rd Cir. 1978); *189 and Parker v. Hanks, 345 So.2d 194 (La.App. 3rd Cir. 1977), writ refused, 346 So.2d 224 (La.1970). The court in Hebert, quoting from Parker, noted that the theoretical underpinnings of the strict liability defenses have not been worked out. "Whether fault of the victim in cases of this kind is the same as contributory negligence in fault based on negligence cases, remains to be fully developed." 355 So.2d at 577; 345 So.2d at 199. The court also noted in Parker that a "reasonable and common-sense construction" should be given to the defenses for strict liability. 345 So.2d at 199.
Another decision in this circuit interpreting Article 2317 held that a victim will be prevented from recovering if her conduct is a cause in fact of the harm producing incident. American Road Insurance Company v. Montgomery, 354 So.2d 656 (La.App. 1st Cir. 1978), writ denied, 356 So.2d 430, 434, 435 (La.1978). In so holding, the court was interpreting that portion of the Loescher case which briefly discussed defenses to a strict liability action under Article 2317. This court in Montgomery equated the "substantial factor" language of Loescher with "cause in fact" and prevented the victim from recovering by finding her conduct was the cause in fact of the accident. The court also said that for victim fault to absolve the defendant of liability, such fault need not be the sole cause of the accident.
A recent case out of the Third Circuit relied on Montgomery for the proposition that for third party fault to absolve the defendant of liability, it must be "substantially the cause" of the accident. Kasperski v. Patterson Services, Inc., 371 So.2d 1254 (La.App. 3rd Cir. 1979), writ denied, 373 So.2d 530 (La. 1979). "Proof of less than substantial causation would not invoke the application of this defense," the court said. 371 So.2d at 1257. The court held the defendants liable in a wrongful death action under Article 2317 because the defendants could not show that a third party was substantially at fault in creating the defect which caused the accident.
Another Third Circuit case, Panek v. Gulf Insurance Co., 341 So.2d 46 (La.App. 3rd Cir. 1976), held that an owner-guardian of a defective thing will escape liability if he can show by "substantial evidence" that the defective thing which caused harm was rendered defective by a third person. 341 So.2d at 53. In that case, the defendant met the burden and the third party was held liable.
The plaintiff in the case at bar urges strongly that for third party fault or for victim fault to absolve a defendant of liability in a strict liability case, such fault must be the sole cause of the accident. For that proposition, the plaintiff cites the case of Olsen v. Shell Oil Company, 365 So.2d 1285 (La.1978). The Olsen case does not stand for the proposition advocated by plaintiff.
As noted earlier, the relationship between victim fault and third party fault, if it exists at all, has not been given ample discussion in the jurisprudence. Olsen dealt solely with the fault of the third person necessary to exonerate a defendant of liability under the strict liability provision of Article 2322, dealing with the ruination of a building. We do not think third party fault can be analogized to victim fault for purposes of strict liability. The Supreme Court in Olsen made no indication that it was speaking of victim fault when it held that third party fault must be the sole cause of an accident in order to relieve an owner of liability for the ruin of his building. If anything, victim fault is more closely analogous to contributory negligence than it is to third party fault under the strict liability articles, especially as third party fault has been understood in the wake of Olsen.
It would be ironic in this case for the defendant to be able to escape liability in a negligence action because of the plaintiff's contributory negligence, yet be held liable under a strict liability theory when the plaintiff has been equally at fault in bringing about the harm. We think the policy reasons underlying Loescher v. Parr point away from such an ironic result. Loescher was based on the proposition that, out of two innocent parties, the owner or guardian of a thing should pay for any damage caused by that thing. We do not have two *190 innocent parties in this case, as the word innocent is understood in strict liability law. For purposes of this case, we think the measure of conduct necessary to achieve the appellation "contributory negligence" is the same measure necessary to amount to "victim fault" under Article 2317.
After careful consideration, we think the trial judge correctly found plaintiff contributorily negligent. Additionally we do not think the plaintiff can recover under Article 2317 because his fault was of such a nature as to constitute "victim fault" under that article sufficient to absolve the defendants of liability.
Therefore, for the above and foregoing reasons, the decision of the trial court is affirmed. Plaintiff-appellant will pay all costs of this appeal.
AFFIRMED.
NOTES
[1] Art. 2317 provides:

"Art. 2317. We are responsible, not only for the damage occasioned by our own act, but for that which is caused by the act of persons for whom we are answerable, or of the things which we have in our custody. This, however, is to be understood with the following modifications."
[2] A recent student comment in the Louisiana Law Review discusses the similarities between negligence concepts and the newer concept of strict liability in Louisiana law. Poole, "Does Louisiana Really Have Strict Liability Under Civil Code Articles 2317, 2318, and 2321?" 40 La.L.Rev. 207 (1979).
[3] A thorough discussion of the victim fault defense as it has developed after Loescher is found in Lastilla, "Fault of the Victim: The Limits of Liability Under Civil Code Articles 2317, 2318, and 2321," 38 La.L.Rev. 995 (1978). See also Verlander, "Article 2317 Liability: An Analysis of Louisiana Jurisprudence Since Loescher v. Parr," 25 Loy.L.Rev. 263, 270 (1979).