423 So.2d 707 (1982)
Carolyn J. FALGOUT, Plaintiff-Appellant,
v.
William B. WARDLAW, et al., Defendants-Appellees.
No. 15020.
Court of Appeal of Louisiana, Second Circuit.
October 25, 1982.
Donald R. Miller, Shreveport, for plaintiff-appellant.
Lunn, Irion, Switzer, Johnson & Salley by Harry A. Johnson, Jr., Shreveport, for defendant-appellee, William B. Wardlaw.
Hargrove, Guyton, Ramey & Barlow by Billy R. Pesnell and Joseph L. Shea, Jr., Shreveport, for defendant-appellee, Amy Sue Hebert Wardlaw.
*708 James L. Fortson, Shreveport, for defendant-appellee, Glen Wardlaw.
Before MARVIN, FRED W. JONES and NORRIS, JJ.
MARVIN, Judge.
Ms. Falgout appeals a judgment rejecting her demands for personal injury damages arising out of her fall on a partially decked pier on Lake Bistineau.
The factual and legal issues relate to the trial court's finding that Ms. Falgout's recovery was barred by her fault.[1] We affirm.
The pier is supported by posts or pilings and is depicted in this photograph.

Each pair of posts is about six feet from the next pair. Ms. Falgout was the social guest of defendant William Wardlaw, who partially decked the pier and frequented the camp with the tacit permission of his brother, Glenn, who owned the once community camp and began construction of the pier. Glenn Wardlaw and his wife, divorced coowner, were also made defendants in this action.
Ms. Falgout accompanied William to the camp on a Saturday afternoon, arriving *709 there from Shreveport about 3:30 p.m. After the two had consumed an eight-pack of "little" beers purchased on the way to the camp, Ms. Falgout also drank some vodka she found in the kitchen of the camp, according to William.[2] While it was still daylight about 7:00 p.m., Ms. Falgout, with a drink in hand, went with William outside the camp while he checked on the camp utilities. William says that he told her not to go on the pier and that she told him, "don't tell me what to do, ... [I have] walked on every pier on Lake Bistineau..."
William said that Ms. Falgout went all the way to the end of the pier and sat there. Ms. Falgout was returning toward the camp when she fell near post four.[3] William said that after she got on the pier he told her not to go past where the boards were close together (25/32 inch spacing between posts one and three almost to post four). In any event Ms. Falgout says that her shoe "got caught between two boards under a board ..." and she fell, suspended by her foot with her head and arms in the water. She suffered serious injuries to her knee and leg.
William, who at one time went on the pier between posts one and two, by this time was back on the ground and heard, but did not see, Ms. Falgout hit the water. He went to her aid and later helped her obtain medical attention.
Notwithstanding that the trial court found the pier, because of its partially constructed state, to be defective and to pose an unreasonable risk of harm to anyone who might walk on it, Ms. Falgout's demands were rejected because the circumstances constituted "victim fault".
In concluding that the accident occurred because of the victim's fault, the trial court said that Ms. Falgout saw, understood, and assumed the risk [of tripping in a space between the decking of the pier]. Ms. Falgout could testify only that her shoe or heel got caught on one of the boards. William testified that she was suspended by her foot which was caught underneath one of the decking boards when he came to her aid.
As a defense to CC 2317-2322 liability, victim fault in some circumstances may encompass either or both assumption of the risk and contributory negligence. Dorry v. Lafleur, 399 So.2d 559 (La.1981). Victim fault is a defense in Louisiana to this strict liability. Langlois v. Allied Chemical Corporation, 258 La. 1067, 249 So.2d 133 (1971); Loescher v. Parr, 324 So.2d 441 (La.1975); Dorry, supra; Carpenter v. State Farm Fire and Cas. Co., 411 So.2d 1206 (La.App. 4th Cir.1982).
Knowledge is the mainstay of assumption of risk and is imputed to a plaintiff, not because he was in a position to make observations, but only when he actually made the observations and it is found that plaintiff should reasonably have known that a particular risk existed. Dorry, supra; Bass v. Aetna Ins. Co., 370 So.2d 511 (La.1979). Assumption of risk is a subjective inquiry. Carpenter, supra; Langlois, supra.
Contributory negligence is conduct which falls below the reasonable man standard and is determined by objective inquiry on a case to case basis. As a defense to CC 2317-2322 liability, it is applied only where the policy considerations imposing the liability on the defendant in the first place are not present, such as where the defendant's conduct is not ultra hazardous, not abnormally dangerous, is not that of a manufacturer whose product causes injury, and is not commercial in the sense that it is designed to render a profit. Where these policy considerations are not present, victim fault includes contributory negligence. Dorry, supra; Carpenter, supra. Some circumstances which may not *710 constitute assumption of risk, may constitute contributory negligence. Carpenter, supra.
Here Ms. Falgout was told by her host not to go on the pier and, after she was on it, she was effectively told not to walk on the area where the decking boards were widely spaced. She had knowledge and, having traversed the pier to its end, she admittedly observed the variance in spacing of the decking. She was returning to the safer area where the decking was more closely and uniformly spaced when her foot or shoe got caught. The trial court's conclusions that she saw and understood the risk are supported by competent evidence which the trial court could believe. We find no error in the ultimate conclusion that Ms. Falgout assumed the risk because she observed and she was effectively told of the risk. Under these circumstances she should reasonably have known of the existence of the particular risk of getting her foot or her shoe caught in the wider spacing. Dorry, Bass, supra.
These circumstances also constitute contributory negligence. Compare Booth v. Potashnick Construction Company, 420 So.2d 512 (La.App. 2d Cir.1982). The defendants here were not engaged in an ultra hazardous or abnormally dangerous activity and were not engaged in a commercial enterprise. While the Wardlaw brothers manufactured or constructed the partially completed pier, they cannot be deemed to have been manufacturers of a product to gain a profit. The policy considerations or factors which impose strict liability to which contributory negligence is not a defense are sorely lacking and, in such circumstances, contributory negligence is encompassed in the defense of victim fault. Loescher, Dorry, Carpenter, supra. See also Lambert v. McReynolds, 402 So.2d 157 (La.App. 1st Cir.1981).
At appellant's cost, the judgment is AFFIRMED.
NOTES
[1] Appellant's four assignments assert that the trial court erred

"1.... in finding that the accident complained of occurred because of the fault of the Plaintiff, Carolyn J. Falgout, i.e. she saw the risk, understood the risk and assumed that risk.
"2.... in not applying the principles of strict liability pursuant to La.Civil Code Articles 670, 2322, 2693 and 2695 and Daire v. Southern Farm Bureau Casualty Ins. Co., 143 So.2d 389 [La.App., 3 Cir., (1962)] Cert. denied.
"3.... in not accepting that the Plaintiff met the requirements required of her and that she proved she was injured as a result of a premise hazard; and, the burden of proof thereby shifted to the Defendants to show that they were not negligent, which, in this case, no evidence was submitted that they were not negligent.
"4.... in not applying the principles of Dorry v. LaFleur, 399 So.2d 559 (Sup.La.) 1981, in applying contributory negligence to the Plaintiff so as to bar her recovery."
[2] William testified that Ms. Falgout drank six or seven of the little beers and that he drank only one because he was not a "beer drinker".
[3] She explained that when she saw that the boards got further and further apart, she elected to go no further and turned around and walked back toward the land.